W. L. SPRATT, Appellant,

v.

Lora L. CARROLL et al., Appellee.

Court of Appeals of Kentucky.

Feb. 11, 1966.

Clyde Williams, Jr., Campbellsville, for appellant.

George O. Bertram, Faulkner & Bertram, Campbellsville, for appellee.

MOREMEN, Chief Justice.

This is an appeal from a judgment of the Taylor Circuit Court which reformed the terms of a bill of sale on the ground that an important portion of the agreement had been omitted by mutual mistake of the parties.

Appellee, Lora Carroll, was the operator of the Little Pine Restaurant in Campbellsville. Appellant purchased from her all equipment, fixtures and furniture used in the business. The bill of sale contained the following warranty of title:

"And the said grantors hereby covenant to and with the said grantee that the said grantors are the lawful owners of the above described goods and chattels; that the same are free from all encumbrances whatsoever; that the grantors have good right to sell the same as aforesaid; and that grantors will warrant and defend the same against all lawful claims and demands whatsoever."

In fact, appellee was not the owner of some of the equipment. She had possession under a conditional sales contract with Food Service Equipment & Supply Company of Louisville. The sum of $1800 was owed on the purchase price.

Issue was joined by appropriate pleading as to whether appellant Spratt had assumed this indebtedness and by mutual mistake of the parties the agreement had been omitted from the terms of the sales contract. Each party obtained a deposition by interrogatories and each deposition is remarkable for its brevity. Mrs. Newton, a sister of appellee Lora Carroll, testified:

"I did overhear a conversation between Mrs. Lora L. Carroll and Mr. W. L. Spratt also Kenneth Spratt. Mr. Nattian Newcomb was present part of the time in this group discussing the sale of the Little Pine Restaurant. One morning shortly before noon in July, I was upstairs at Mrs. Abe Newton's in the kitchen by an open window ironing. My son, William Thomas Newton II, 16 years old at the time, was with me talking. We heard voices below us and recognized Mr. W. L. Spratt's and Kenneth's among the group discussing the sale of Little Pine Restaurant to them. The verbal agreements I heard mostly were that they would pay $5000 for the restaurant and there was a note on the ice machine that was to be transferred into their name soon as my sister, Mrs. Carroll, could get it transferred. They were quite anxious to go into operation on Aug. 1, 1960, rather than delay the opening date to get the note changed over into Spratt's name. It seemed that Mrs. Carroll had to find out where to go to get this matter taken care of concerning the ice machine. There were other parts I heard both parties speak that had not too much bearing on the part under discussion."

Robert Spratt, a son of appellant who was present at the time of the transaction, testified:

"A. Yes, I do. W. L. Spratt and Robert K. Spratt wrote a check on July 29, 1960, for the sum of Five Thousand Dollars ($5000.00) purchasing the Little Pine Restaurant from Lora L. Carroll. The only persons present during the transaction were W. L. Spratt, Robert K. Spratt, Patricia Ann Spratt. The $5000 was for a cash sale, for which a certified Bill of Sale was given to W. L. Spratt, stating that the business purchased was free and clear from all encumbrances. Bill of Sale is now in the courts, which can be looked up very easily.

"Q. The only persons present in this transaction were the above mentioned? A. Definitely not, as far as Mrs. Geneva M. Newton is concerned, she could absolutely (not) know anything or hear any conversation concerning this affair. The transaction of this sale was made in an alley over a hundred yards from any buildings. Mrs. Geneva M. Newton is swearing perjury, to my knowledge."

The court made a finding of facts and conclusion of law which contained some facts we are unable to find in the record. Thereafter he entered a judgment which reformed the bill of sale and gave appropriate adjudications as to various secondary matters which were pending, which decisions were predicated upon the determination that the bill of sale should be reformed.

■ It has long since been settled that reformation is the proper remedy where a provision the parties agreed upon has been omitted by mutual mistake from the final written instrument. Employers Liability Assurance Corp. v. Johnson County, Ky., 262 S.W.2d 367. The theory behind this remedy is that the final document is intended to be no more than the integration in writing of terms already agreed upon and insofar as it differs from those terms the instrument should be corrected. See generally Corbin, Construction, § 614.

■ A contract itself duly executed and introduced into court has great weight as evidence of mutual agreement. We have often held that contracts made between competent persons are not to be set aside

lightly. Zeitz v. Foley, Ky., 264 S.W.2d 267. When one party maintains that there has been no mistake and that he has never expressed assent to any agreement other than the one stated in writing, the testimony and corroborating evidence of the party seeking reformation must be extremely strong in order to overcome the specific terms of the contract. One who relies on the defense of mutual mistake must prove the allegation by clear and convincing proof. Silver v. Overhead Door Co., 311 Ky. 650, 225 S.W.2d 115.

■ The proof offered by appellee does not reach this high standard as may be readily determined by reading the deposition of Mrs. Newton above quoted.

The judgment is therefore reversed for a new trial with directions that the bill of sale be enforced according to its terms.